

Eastern District of Kentucky
FILED

JAN 3 1 2007

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-155-GWU

MARVIN ENGLE,                                          PLAINTIFF,

VS.                    **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,            DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step

1

Engle

> 4.  If no, the claimant is not disabled.   See 20 C.F.R.
> 404.1520(c), 404.1521, 416.920(c), 461.921.

4.  Can the claimant's severe impairment(s) be expected to result
in death or last for a continuous period of at least 12 months?
If yes, proceed to Step 5.  If no, the claimant is not disabled.
See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of
impairments meeting or equaling in severity an impairment listed
in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of
Impairments)? If yes, the claimant is disabled.  If no, proceed
to Step 6.  See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d),
416.926(a).

6.  Can the claimant, despite his impairment(s), considering his
residual functional capacity and the physical and mental
demands of the work he has done in the past, still perform this
kind of past relevant work?   If yes, the claimant was not
disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e),
416.920(e).

7.  Can the claimant, despite his impairment(s), considering his
residual functional capacity, age, education, and past work
experience, do other work--i.e., any other substantial gainful
activity which exists in the national economy?  If yes, the
claimant is not disabled.   See 20 C.F.R. 404.1505(a),
404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to

the judicial review of administrative agency action apply.   Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence.  Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established

3

Engle

medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Engle

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a

5

Engle

person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).   If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley  v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

Engle

## DISCUSSION

The administrative law judge found that there was no medical evidence of record showing significant change since the time of the last unfavorable administrative decision on a prior benefits application in September, 2001; accordingly, he determined that the plaintiff's impairments continued to be hypothyroidism, hypertension, a history of a cardiovascular accident, degenerative joint disease, depression and anxiety. (Tr. 23). The ALJ then adopted the residual functional capacity assessment opinion of the prior hearing judge (Id.),[1] finding the plaintiff restricted to a limited range of light level work (Tr. 28). This rendered Engle unable to engage in his past work, but capable of performing a significant number of alternative jobs at the light level (Tr. 29). Thus, the claims for benefits were denied. (Tr. 29).

At the current administrative hearing, the vocational expert (VE) was presented with a hypothetical vocational profile which included: (1) a limitation to light level lifting and carrying, (2) an ability to sit, stand and walk six hours out of eight hours, (3) an inability to ever climb ladders, (4) an ability to only occasionally balance, stoop, kneel, crouch and crawl, (5) a need to avoid heights and hazardous machinery, and (6) a restriction to simple instruction and simple work tasks in a non-public, low stress

---

[1]See Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997); Acquiescence Ruling 98-4(6).

7

environment. (Tr. 366). In response, the VE identified a variety of light level jobs (Tr. 367) which were ultimately relied upon in the ALJ's opinion (Tr. 27-28).

Examination of the record shows that the hypothetical factors were, indeed, those which had been cited in a prior negative administrative decision issued in September, 2001. (Tr. 54). The plaintiff, however, argues that there was more recent evidence of deterioration in his mental condition from Examiners Belew, Atcher and Muckenshausen.

Although the ALJ did not explicitly indicate what weight he gave the assessment of Consultative Examiner William Rigby, he did at least rely upon this examiner in rejecting other reports of record, on the grounds that they focused upon the plaintiff's alleged abuse in childhood (Tr. 26). Thus, an examination of Rigby's report is in order.

Reviewing Rigby's report, it was indicated that the plaintiff told the examiner that he had had an unstable early childhood environment, and that he was "raised by different people" (Tr. 165); he also indicated that he only had occasional contact with his parents and few interactions with other family members (Tr. 166). He mentioned long-standing depression. (Tr. 163). Rigby described the plaintiff as somewhat passive aggressive, "limited" intellectually but not mentally retarded, and apparently from a deprived background. (Tr. 164). His affect was stable, no manifestations of anxiety were apparent, and he appeared fully alert and oriented; on the other hand, some of his statements were concrete and his mood seemed mildly dysphoric. (Tr.

8

Engle

164). He appeared to be able to interact with the examiner unremarkably. (Tr. 166). Rigby, who noted that the plaintiff "alleged" mental health treatment (Tr. 166) but apparently was provided with no records, diagnosed only "dysthymia by claimant report" and indicated that the plaintiff had an undefined "fair" ability to relate to others (including fellow workers and supervisors) and respond to the stresses in a normal work environment (Tr. 167). Thus, accepting for the moment the argument that Rigby's report would properly provide some basis to reject other mental health specialists' reports of record, it appears that Rigby himself mentioned mental restrictions in relating to *persons beyond the public* which were not included in the hypothetical question.

Beyond the fact that Rigby's report itself suggested additional limitations is the issue of whether Rigby's report could be used to reject opinions from other sources. As noted previously, the ALJ argued that the fact that the plaintiff did not mention to Rigby incidents of childhood abuse was grounds to discount the reports of other sources to whom he did recount instances of the abuse. However, a close reading of the recitation of the plaintiff's statements to the consultative examiner indicates that while he did not describe actual abuse during his childhood, he did describe it at least as "unstable" to Rigby. It is unclear how much questioning was done about the plaintiff's childhood during the interview. The consultative examiner also apparently had no access to treatment records which did include among the

Engle

diagnoses "rule out" post traumatic stress disorder. (Tr. 169). Accordingly, using this

basis alone to reject other mental health examiners' reports is problematic.[2]

The rejected examiners were Doctors Belew, Atcher and Muckenhausen.

Dr. Barbara Belew provided the only detailed testing of record, based on a

one-time examination in 2004. To her, Engle described instances of abuse during

childhood, at the hands of his parents and other caregivers. (Tr. 244). She noted

that Engle became easily agitated when talking about his childhood. (Tr. 245).

WRAT scores suggested second to fifth grade achievement, which was said to be

consistent of a chaotic early life (Id.).[3] An instrument referred to as the HAM-D-17

reportedly yielded evidence of severe depression. (Tr. 245). Abbreviated IQ testing

indicated average intelligence. (Id.). The examiner opined that the plaintiff had

severe, recurrent depression as well as an anxiety disorder and cited an extremely

low current GAF of 35. (Tr. 246). All abilities to make occupational adjustments were

listed as no better than "seriously limited but not precluded." (Tr. 247). Thus, both

the suggestion provided by the GAF level as well as the specific restrictions were

significantly more limiting than the hypothetical factors chosen.

_____

[2]The Court notes that the previous agency decision referenced the plaintiff's statement in 2000 to a consultative mental health examiner indicating that he had been abused in childhood. (Tr. 49). Thus, his claim is not an entirely new one. Further, while the previous ALJ had ultimately determined that the plaintiff had only a limited number of mental restrictions, he was assisted by the testimony of a medical expert reviewing different mental health records than are currently under review. (Tr. 49-50).

[3]The WRAT findings were also considerably lower than the "limited" educational level which had been credited to the plaintiff by the ALJ (Tr. 29).

10

Engle

In 2005, a psychiatric evaluation was performed by Dr. David Atcher. The plaintiff also described a history of childhood abuse to the examiner, this time in extremely graphic detail. (Tr. 277-278). The examiner described the plaintiff's facial expression as anxious and frightened. (Tr. 281). His observed mood was one of depression and in attitude, he was said to be "paranoid." (Id.). Post traumatic stress disorder was diagnosed. (Id.). This examiner also cited a low GAF of 40. (Tr. 282). Beyond this, Atcher's report specifically referenced an inability to do well with supervisors and co-workers. (Id.). His form, although seemingly suggesting fewer limitations than the text of his report and even though the comments on the form included a reference to the fact that "this man has a short attention span . . . is very paranoid and suspicious of others," did refer to moderate restrictions in handling short, simple instructions. (Tr. 285). Again, the GAF score as well as the specific restrictions were more limiting than the hypothetical question.

Although she was a neurologist, rather than a mental health specialist, Christa Muckenhausen also assessed a number of "seriously limited but not precluded" occupational adjustment abilities (Tr. 234) after hearing about the plaintiff's "horrendous" childhood (Tr. 229) and describing "evidence of severe chronic depression" and "possible schizo-affective personality" disorder (Tr. 231).[4] While

_____

[4]The staff at the plaintiff's treating facility, although not speaking to functional restrictions, diagnosed a major depressive disorder with psychotic features in 2002, with a notation about ruling out a schizoaffective disorder. (Tr. 302).

11

Engle

Muckenhausen was not a mental health specialist, she did at least provide evidence which buttressed the plaintiff's claims.

The only remaining mental health evidence which is current to the present applications for benefits were from the non-examining medical reviewers. Medical Reviewer Trout was unable to address the examiners' opinions. (E.g., Tr. 224). See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). He also did not make any written comments on the "functional capacity assessment" portion of his form. (Tr. 222). Additionally, not only the "summary conclusions" but also the "functional capacity assessment" part of Medical Reviewer Jane Brake's form (Tr.199-201) cited differently-worded restrictions than were given to the VE.[5] Thus, it does not appear that the ALJ could have actually relied upon these opinions.

The case must be remanded for further consideration of the plaintiff's mental limitations, in view of the multiple problems in analysis of these factors.

This the ___3*l*___ day of January, 2007.

G. WIK UNTHANK
SENIOR JUDGE

---

[5]In the functional capacity assessment part of the form, Brake mentions an "object-focused setting" and "routine tasks" (Tr. 201), which is not precisely worded the same as the hypothetical factors.

12